UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KORINA YOUNG,

    Plaintiff,

v.

CITY OF MUSKEGON HEIGHTS, et al.,

    Defendants.

_____/

Case No. 1:23-cv-460

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Korina Young sues the City of Muskegon Heights (the "City") and one of its code enforcement officers, Calvin Davis, under 42 U.S.C. § 1983 and state law. Before the Court is Defendants' motion for summary judgment (ECF No. 32). For the reasons herein, the Court will grant the motion as to the federal claims. The Court will decline to exercise supplemental jurisdiction over the remaining claims and dismiss them.

### I. BACKGROUND

**A. Plaintiff's Background**

Plaintiff is a resident of Spring Lake, Michigan. In 2017, she started working as a real estate agent and a property manager contracted by Real Property Management ("RPM"), whose owner was Matt Engel. (Young Dep. 8-9, ECF Nos. 33-1, 35-21; Engel Dep. 7, ECF Nos. 33-2, 35-23.) As a property manager for RPM, Plaintiff collected rent and showed properties to potential tenants. She would also contact the City to arrange for inspections to ensure that the properties were suitable for rental. (*Id.* at 12.)

### B. Plaintiff Manages a Property in Muskegon Heights

One of the properties Plaintiff put up for sale and briefly managed was 44 Oakwood Avenue in Muskegon Heights, Michigan (the "Property"). (*Id.* at 15-16.) She was the real estate agent for the sale of that property to one of Engel's entities, H4H Holdings, LLC, in 2021. (*Id.* at 16; Engel Dep. 7, 36.) She acknowledges that she may have arranged for the City to conduct an inspection of the property in April 2021. (Young Aff. ¶ 6, ECF No. 35-17.) She worked for RPM until August 2021. (Young Dep. 12.)

### C. An Inspection Report for the Property Shows Plaintiff's Name

An inspection report and permit for the Property from April 2021 shows H4H Holdings as the "owner" and includes the name "Korina" next to a phone number in several places by a "Scheduling Comment." (Point of Sale Permit, ECF No. 33-10, PageID.187, 191-193.)

According to the City's Chief of Inspections, Karey Morrow, inspection reports like the kind that Plaintiff requested for the Property are saved in an online "BS&A" software database. (Morrow Dep. 15, ECF No. 35-24.) Morrow would use this database to determine the owner or responsible party for any blight ordinance violations on a particular property. (*Id.* at 17-18.) The database is a "hub" where information about a property is gathered, including "permits being pulled, . . . ownership of the property, contact information, [and] any citations written[.]" (Davis Dep. 15, ECF Nos. 33-3, 35-22.) Indeed, a recent BS&A report for the Property shows that three inspections at the Property were completed on April 27-28, 2021. (BS&A Report, ECF No. 35-14, PageID.300, 303-305.) Like the permit, the entries in that report for each of these inspections contain the phrase "scheduling comment" next to Plaintiff's first name and a phone number. (*Id.*, PageID.303-305.) In other places, that report lists H4H Holdings as a prior owner of the property. (*Id.*, PageID.294, 299, 301, 302, 304, 305, 307.)

**D. Davis Issues Citations Against Plaintiff for the Property**

Defendant Davis began working for the City as a code enforcement officer in 2020. (Davis Dep. 14.) When conducting an inspection of the Property in 2021, Davis noticed several violations of the City's blight ordinance, including "open storage and prohibited growth." (*Id.* at 33.) During Davis's training, Morrow had taught him to look up the person responsible for a particular property through the BS&A database. (*Id.* at 14-15.) When looking up information for the Property, Davis found Plaintiff's name; according to Davis, she was the only individual associated with that property in the database. (*Id.* at 16-18.) However, the database does not necessarily list property owners; there could be multiple names associated with one particular property, including property owners and property managers. (*Id.* at 18, 21, 25.) On November 2, 2021, Davis issued a citation to Plaintiff regarding the blight violations. (*See* Citation, ECF No. 35-2, PageID.252.) He says he issued it to Plaintiff because only her name appeared in the BS&A database as the individual responsible for the property,[1] though he does not recall whether the database also listed an owner or business associated with the Property. (Davis Dep. 16-18.) At the time, however, Plaintiff had no responsibility for the Property; she was not its owner or manager and was not employed by its owner or manager.

Davis sent the citation to Plaintiff by mail to an address on 28th Street in Grand Rapids, Michigan (*see* Citation); he claims he obtained this address from the BS&A database. (Davis Dep. 45.) Plaintiff did not receive the citation because that address did not belong to Plaintiff. Instead, it had been the main office address for all of Engel's business entities, including RPM and H4H Holdings, until they moved to a different suite in the same building over a year before the

---

[1] Plaintiff argues that Davis's testimony about the BS&A database's reference to Plaintiff as a responsible party is hearsay. She is incorrect. Davis does not offer this evidence to prove the "truth of the matter asserted" (i.e., that Plaintiff was responsible for the Property); instead, he offers it as evidence of what he witnessed and why he acted as he did. At any rate, the outcome of Plaintiff's motion is not impacted by this evidence.

3

citation. (Engel Dep. 22, 35-36.) Engel does not recall whether he informed the City that his entities had changed addresses, and he does not recall seeing the citation or informing Plaintiff of it. (*Id.* at 31, 36.)

### E. The District Court Issues a Default Judgment, Order to Show Cause, and Warrant for Plaintiff's Arrest

Generally, after Davis issues a citation, it "goes into the court system." (Davis Dep. 46.) If there is no response to the ticket, Davis does nothing further. (*Id.*) He is not involved in any court proceedings unless there is a dispute about the ticket. (*Id.* at 48.) Here, the 60th District Court assessed a fine against Plaintiff and then entered a default judgment against her when she failed to pay. (60th District Ct. Docket Sheet, ECF No. 35-3, PageID.254-258.) The docket sheet indicates that the court then issued or mailed six "overdue payment statement notices" and added late fees to the fine against Plaintiff. (*Id.*, PageID.256-257.) On July 25, 2022, the court entered an order requiring Plaintiff to appear and to show cause why she should not be held in civil contempt for failing to pay the fines. (Order to Show Cause, ECF No. 35-3, PageID.260.)

Plaintiff was not aware of the show cause order or the citation proceedings. The district court directed service of its show cause order on Plaintiff by mail, but the order referenced the 28th Street address, to which Plaintiff had no connection at the time. (*See id.*) On August 22, 2022, after Plaintiff did not appear, the court issued a bench warrant for Plaintiff's arrest due to her failure to appear at the show cause hearing and failure to pay the fines. (*See* Bench Warrant, ECF No. 35-3, PageID.259 (describing the reason for the warrant as "DEF FTA AT ORDER TO SHOW CAUSE HEARING FOR FAILURE TO PAY F&C").) At some point, she was charged with a misdemeanor offense for failing to appear at the show cause hearing. (*See* Pretrial Release Order, ECF No. 35-6, PageID.270 (describing misdemeanor offense of "FTA for Show Cause for FTP").)

4

### F. Police Detain Plaintiff on January 7, 2023, and Tell Her About the Warrant

On January 7, 2023, a police officer in Grand Haven, Michigan, stopped Plaintiff because she did not have a visible license plate on her vehicle. (Young Dep. 20-21.) During the stop, the officer informed her that there was a warrant for her arrest due to a citation for property in the City. (*Id.* at 21.) The officer required Plaintiff to step out of her vehicle, and then he put her in handcuffs in the back of a police cruiser. (*Id.* at 22.) About 30 to 45 minutes later, after contacting the City, the officer told Plaintiff that she needed to call the City to "clear up" the citation. (*Id.*) The officer then released Plaintiff and she returned home. (*Id.* at 23.)

### G. Plaintiff Contacts Davis to Clear Up the Warrant

Two days later, on January 9, Plaintiff contacted Davis, who insisted that Plaintiff try to find the owner of the home and provide proof that she no longer worked for the property management company. (*Id.* at 24.) She was able to obtain an email from one of Engel's partners confirming that she stopped working for RPM in August 2021. (*Id.* at 25.) She sent this email to Davis. Later that afternoon, Davis told her that he would submit a "nolle prosequi" to resolve the matter. (*Id.* at 24.) He sent an email to an attorney working for the City, asking to "nolle" the citation for Plaintiff because "it was issued to the property manager instead of Matthew Engel the owner." (1/9/2023 Davis Email, ECF No. 33-8.) That attorney forwarded the email to a colleague, asking her to "take care" of it. (*Id.*) The next day, Davis assured Plaintiff that the matter "was taken care of[.]" (Young Dep. 24.)

### H. Police Arrest Plaintiff on March 29, 2023, Under the Warrant

On March 29, 2023, a police officer in Spring Lake, Michigan, stopped Plaintiff because her license plate registration had expired and she had not updated the registration sticker. (*Id.* at 30.) She told him that she had already renewed her registration and was waiting to receive the new sticker in the mail. (*Id.*) He then informed her that there was a warrant for her arrest from

5

the City. (*Id.*) He told her to step out of her vehicle and then put her in handcuffs and into the back of his police cruiser. (*Id.* at 31.) She tried to explain that the warrant was a mistake, but he said he needed to confirm that with the Muskegon Heights city manager. (*Id.*) After contacting someone at the City, the officer drove her into the City and put her into the custody of a City police officer, who explained that they were detaining her due to a property citation. The officer took her to a local jail, where she was detained in a holding cell. (*Id.* at 35.) After five or six hours, an acquaintance posted bail and Plaintiff was released with instructions to appear in court and to not leave the state. (*Id.* at 35-37.)

### I. Plaintiff Contacts Davis and the Charges are Dismissed

The following day, March 30, Plaintiff called Davis and explained what happened. (*Id.* at 37.) He apologized and assured her that he had filed the appropriate paperwork. (*Id.*) Three days later, she learned from the clerk of the court that her hearings had been canceled. (*Id.* at 38.) The City's attorney had moved to dismiss the charges against her on March 30, 2023, and the court had granted that request the next day. (*See* Motion/Order of Nolle Prosequi, ECF No. 35-10.)

### J. Plaintiff's Claims

Plaintiff asserts in Count I of her amended complaint that Davis violated her constitutional rights under the Fourth and Fourteenth Amendments by "caus[ing] unconstitutional seizures, arrests, and searches, and a malicious prosecution, against [P]laintiff." (Am. Compl. ¶ 55, ECF No. 39.)

In Count II of the amended complaint, Plaintiff contends that the City is liable for the constitutional violations she suffered because the City's attorney did not enter a nolle prosequi or withdraw the arrest warrant for Plaintiff after Davis first asked him to do so in January 2023 and because the City "made a decision not to hire a city attorney after February 1, 2023," meaning that "there was no one present who could correct the legal errors of its agents." (*Id.* ¶¶ 61-62.)

6

In Count III, Plaintiff claims that Davis's conduct amounts to false arrest, malicious prosecution, and false imprisonment under state law.

Defendants seek summary judgment on all claims. Plaintiff filed her amended complaint after Defendants filed their motion for summary judgment; however, the Court can rule on the motion because the amended complaint is substantially the same as the original.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## III. QUALIFIED IMMUNITY

Defendant Davis asserts qualified immunity as a defense to the federal claims under 42 U.S.C. § 1983. Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). It "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

7

Plaintiff bears the burden of overcoming the defense of qualified immunity. *See Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). To do so, she must show "(1) that [Defendant] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (internal quotation marks omitted). "[C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* When assessing the two prongs, the Court must view the facts and evidence in the light most favorable to Plaintiff. *King v. City of Rockford*, 97 F.4th 379, 390 (6th Cir. 2024).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citations and quotation marks omitted). It is not necessary for there to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 583 U.S. at 64 (quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him*. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established.

8

*Id.* at 63-64 (citations and quotation marks omitted; emphasis added). "Notice to officials is paramount; 'the salient question' in evaluating the clearly established prong is whether officials had 'fair warning' that their conduct was [unlawful]." *Guertin*, 912 F.3d at 932 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). When addressing the clearly established standard, Plaintiff's burden includes "pointing to legal authority that clearly shows that the constitutional question . . . should be resolved in [her] favor." *Linden v. City of Southfield*, 75 F.4th 597, 604 (6th Cir. 2023).

## IV. ANALYSIS

### A. Count I: Constitutional Violations – Defendant Davis

#### 1. Fourth Amendment: False Arrest

Plaintiff contends that Davis caused her to be arrested (and searched) without probable cause, in violation of the Fourth Amendment. "Individuals generally have the right to be free from arrest without probable cause." *Harris v. City of Saginaw*, 62 F.4th 1028, 1033 (6th Cir. 2023). To prevail on a false arrest claim, Plaintiff must show that "the *arresting officer* lacked probable cause to arrest [her]." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (emphasis added). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest[.]" *Id.* Alternatively, a plaintiff can prevail by proving "'(1) that the *officer applying for the warrant*, either knowingly and deliberately or with reckless disregard for the truth, made false statements or omissions that created a falsehood[,] and (2) that such statements or omissions were material to the finding of probable cause.'" *Tlapanco v. Elges*, 969 F.3d 638, 654 (6th Cir. 2020) (quoting *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014) (emphasis added)).

Plaintiff's claim fails because Davis did not arrest (or search) Plaintiff or apply for a warrant to do so. The district court issued the arrest warrant and then police officers acted on that warrant. There is no evidence that Davis was involved in that process.

9

Plaintiff nevertheless insists that Davis is liable because his citation set in motion a process that led to Plaintiff's search and arrest. However, Plaintiff offers no authority that supports such a theory of liability. The case she cites, *Jacobs v. Perry*, No. 1:20-cv-358, 2021 WL 2102394 (W.D. Mich. May 25, 2021), is distinguishable because the defendant-officer in that case sought the arrest warrant that was the basis for the plaintiff's arrest. *Id.* at *2. Davis did not seek such a warrant here.

Moreover, the record indicates that the district court issued the warrant for events that occurred *after* Davis issued the citation, and for which Davis is not responsible. The court did not rely on the citation alone as the basis for the warrant. Instead, the court cited Plaintiff's failure to appear in response to the court's show cause order and failure to pay the fines assessed by the court. The court apparently assumed that Plaintiff had received notice of the court's orders and did not respond, but Davis is not responsible for that assumption. Unlike an officer submitting an affidavit in support of a warrant, Davis did not make a deliberate or reckless misrepresentation to the court that caused it to issue the warrant. He did name Plaintiff in the citation and he did use an invalid address in that citation—the same address apparently used by the court—but the court had discretion to determine whether to resort to an arrest warrant after Plaintiff did not respond to the citation, to the default judgment, to the notices of overdue payment, or to the court's show cause order. Plaintiff's repeated lack of response at multiple stages could have prompted the court to verify whether Plaintiff was even aware of the proceedings. For instance, the court could have directed service of its show cause order on Plaintiff personally rather than ordering service by mail to an unverified address.

Had the court taken additional steps to ensure that Plaintiff received notice of the proceedings, she could have responded and there would have been no need for an arrest warrant.

10

Thus, the arrest warrant was not an inevitable or natural result of Davis's actions, as Plaintiff contends. Rather, the court made an independent decision to issue the warrant based on the circumstances before it. That decision "broke the causal chain" between the citation and Plaintiff's arrest. *Cf. Howell v. Cox*, 758 F. App'x 480, 483 (6th Cir. 2018) (concluding that a judge's "intervening act" of issuing an arrest warrant for a failure to appear "br[oke] the causal chain" connecting the officer's prosecution to the plaintiff's arrest).

Put another way, even if Davis wrongly named Plaintiff in the citation, he could not have reasonably foreseen that (1) Plaintiff would not respond to the citation, (2) the district court would issue a default judgment against Plaintiff, (3) the court would issue an order for Plaintiff to appear and show cause for failing to pay the fines, (4) the court would send its show cause order to Plaintiff by mail instead of serving her personally, (5) Plaintiff would not receive or respond to the court's default judgment or show cause order, (6) the court would issue an arrest warrant, and (7) Plaintiff would be arrested and held in jail.

In short, because Davis had no role in the issuance of the bench warrant, he is not responsible for Plaintiff's arrest and is not liable for a claim of false arrest (or for an unreasonable search conducted in connection with that arrest) under § 1983. *Cf. DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) (holding that an officer who issued a ticket is not liable for the arrest of a plaintiff who failed to appear in court in response to the ticket because the officer had no role in issuance of the bench warrant). Accordingly, the Court will dismiss the Fourth Amendment claim against Davis regarding Plaintiff's arrest (and the search that accompanied it).

### 2. Fourth Amendment: Malicious Prosecution

Plaintiff also claims that Davis caused her prosecution without probable cause, leading to her arrest. "[F]alse arrest and malicious prosecution are versions of a general unreasonable seizure claim under the Fourth Amendment." *Givens v. Loeffler*, No. 21-3119, 2021 WL 6848962, at *3

11

(6th Cir. Sept. 17, 2021).  Both types of claims require a "seizure" caused by the defendant. Specifically, a malicious prosecution claim requires the following:

> (1) "that *a criminal prosecution* was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, *as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . .* apart from the initial seizure"; and (4) that "the *criminal proceeding* must have been resolved in the plaintiff's favor."

*Tlapanco*, 969 F.3d at 654-55 (quoting *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) (emphasis added; brackets and quotations marks omitted)).  Of course, "an investigating officer does not escape liability just because someone else (e.g., the prosecutor) made the actual decision to prosecute, so long as the plaintiff can show that the officer influenced or participated in the decision to prosecute." *Id.* at 655 (quoting *Sampson v. Vill. of Mackinaw City*, 685 F. App'x 407, 417 (6th Cir. 2017) (quotation marks omitted)).

The disposition of Plaintiff's malicious prosecution claim follows from the Court's logic regarding her false arrest claim.  A malicious prosecution claim under the Fourth Amendment recognizes that an official can cause a seizure lacking probable cause without being directly involved in an arrest.  Initiating a criminal proceeding can have that effect because such proceedings can be expected to lead to an arrest and incarceration.  But because Davis is not responsible for Plaintiff's arrest, he is not liable for malicious prosecution under § 1983.

As discussed above, the district court elected to issue an arrest warrant without Davis's involvement.  Davis could not have reasonably foreseen the series of events that would cause the court to do so.  And "[b]ecause [Plaintiff] cannot prove that [Defendant] foreseeably caused [her] deprivation of liberty, [s]he cannot prove [her] malicious prosecution claim against [him]." *Howell*, 758 F. App'x at 483.

12

Moreover, *Sykes* expressly requires the initiation of a *criminal prosecution* against the plaintiff to assert a malicious prosecution claim. Plaintiff cannot meet this requirement because Davis did not initiate a criminal prosecution or influence the decision to initiate one. Instead, Davis issued a citation to Plaintiff for municipal ordinance violations. The citation itself indicates that these violations were civil infractions, not criminal violations subject to arrest and incarceration. (*See* Citation (stating that it is for civil infractions, rather than misdemeanors or felonies).) Issuing a ticket for a civil infraction cannot support a malicious prosecution claim under the Fourth Amendment. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) ("The District Court properly granted summary judgment on the malicious prosecution claim with respect to four of the seven tickets because they constituted civil infractions, not criminal prosecutions."); *Vasquez v. City of Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985) (issuing tickets for a civil infraction does not give rise to a malicious prosecution claim under § 1983 because the plaintiff was in no danger of imprisonment due to the defendants' actions); *Givens*, 2021 WL 6848962, at *3 (finding no malicious prosecution claim where "the evidence indicates that Givens was given two tickets for municipal violations, which is insufficient to demonstrate a deprivation of liberty"); *accord Myers v. Wren*, Nos. 22-2148/23-1807, 2024 WL 1506452, at *2 (6th Cir. Apr. 3, 2024) (holding that a plaintiff complaining of restrictions imposed on him due to an ordinance violation did not state a malicious prosecution claim because "he did not allege that criminal proceedings were instituted against him"). According to the district court record, the misdemeanor charge against Plaintiff was for a failure to appear that occurred after the citation issued. There is no evidence that Davis influenced the decision to bring that charge.

Accordingly, the Court will grant summary judgment to Davis on the malicious prosecution claim under the Fourth Amendment.

### 3. Fourteenth Amendment: Procedural Due Process

Plaintiff's amended complaint implies that Davis violated her right to procedural due process under the Fourteenth Amendment. It asserts that "an officer cannot obtain [a] default judgment against an individual without giving her notice and an opportunity to be heard." (Am. Compl. ¶ 53.) As discussed above, however, Davis was not involved in obtaining the default judgment against Plaintiff, so he is not responsible for her lack of notice and opportunity to be heard. At any rate, Plaintiff does not discuss this claim in her response brief, so she has waived it. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018). Thus, to the extent Plaintiff raises such a claim, the Court will dismiss it.

### 4. Qualified Immunity

Even if Plaintiff's constitutional claims against Davis were not subject to dismissal on their merits, the Court would dismiss them on the basis of qualified immunity. Plaintiff argues that Davis had no basis for issuing a citation to Plaintiff. She contends that one of the municipal ordinances imposes liability on the property owner only; thus, Davis should have known that Plaintiff was not the proper target of the citation. Plaintiff also contends that there is a dispute of fact about whether the BS&A database identified Plaintiff as a responsible party for the Property. Regardless, Plaintiff fails to point to any precedent that would have made it clear to an official in Davis's position that issuing a citation to the wrong person for a municipal ordinance violation would violate that person's clearly established rights under the Fourth or Fourteenth Amendments. To the contrary, the Court of Appeals has indicated that "'service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation.'" *Noonan v. Oakland Cnty.*, 683 F. App'x 455, 463 (6th Cir. 2017) (quoting *Billock v. Kuivila*, No. 4:11-cv-02394, 2013 WL 591988, at *6 (N.D. Ohio Feb. 14, 2013)). Davis's conduct involved issuing a citation, which is similar to issuing a summons to appear and respond. That conduct

alone was not a constitutional violation.  Thus, Davis is entitled to qualified immunity because Plaintiff has not met her burden of showing that his conduct violated a clearly established right.

### B. Count II: Constitutional Violations – City of Muskegon Heights

In her amended complaint, Plaintiff claims that the City violated her constitutional rights when it "made a decision not to hire a city attorney after February 1, 2023, and it therefore knew that there was no one present who could correct the legal errors of its agents." (Am. Compl. ¶ 61.) Plaintiff alleges that, after Davis asked the City Attorney to file a nolle prosequi in the civil case against Plaintiff, "the city attorney refused or neglected to do so." (*Id.* ¶ 62.)

A municipality like the City "may not be held liable under § 1983 on a *respondeat superior* theory—in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2013) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  "Instead, a plaintiff must show that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Wright v. City of Euclid*, 962 F.3d 852, 879-80 (6th Cir. 2020) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)).  "A plaintiff does this by showing that the municipality had a 'policy or custom' that caused the violation of his rights." *Id.* at 880 (quoting *Monell*, 436 U.S. at 694).

> There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."

*Id.* (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019)).

Here, Plaintiff points to evidence that, after Davis asked attorneys working for the City to enter a nolle prosequi, one of those attorneys asked a colleague to "take care of this." (1/9/2023 Email, ECF No. 33-8, PageID.183.)  Apparently, nothing was done until after Plaintiff was arrested in March 2023.  Davis then followed up with the city attorney and asked him to respond "asap"

15

because the citation "reached warrant status and should have been resolved by former coun[sel]." (3/30/2023 Email, ECF No. 35-16, PageID.326.)

Plaintiff contends, without supporting evidence, that the attorneys working for the City were final decisionmakers regarding whether to file a nolle prosequi. Thus, Plaintiff argues that the City is liable because an official with final decision-making authority ratified a groundless prosecution and arrest of Plaintiff.

Plaintiff's claim against the City is meritless. Not every act (or in this case, failure to act) by a final decision maker amounts to a policy by the municipality. Rather, the official must be "acting in a policymaking capacity." *Wooten v. Logan*, 92 F. App'x 143, 147 (6th Cir. 2004). In other words, he or she must be making "a deliberate choice to follow a course of action . . . from among various alternatives[.]" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Otherwise, every act or failure to act by such an official could give rise to liability for the City, which is the equivalent of *respondeat superior* liability. *Wooten*, 92 F. App'x at 147. "Such a rule would contravene *Pembaur*'s attempt "to distinguish acts of the *municipality* from acts of *employees* of the municipality." *Id.* (quoting *Pembaur*, 475 U.S. at 479). Here, there is no evidence that the attorneys working for the City were acting in a policymaking capacity or were making a deliberate choice of action from among alternatives when they did not enter a nolle prosequi.

Plaintiff's evidence shows, at most, negligence by the City's attorneys in responding to Davis's request to have the proceedings against Plaintiff dismissed. "Negligence does not establish a § 1983 claim." *Molton v. City of Cleveland*, 839 F.2d 240, 247 (6th Cir. 1988). In addition, it does not provide evidence of a municipal policy. *Id.* at 246-47. Accordingly, the Court will dismiss Plaintiff's § 1983 claim against the City.

### C. Count III – Intentional Torts

Plaintiff's remaining claims are for false arrest, malicious prosecution, and false imprisonment under state law. The Court has supplemental jurisdiction over these claims. Because the Court will dismiss Plaintiff's federal claims, the Court must decide whether to exercise supplemental jurisdiction over Plaintiff's claims arising under state law. Ordinarily, where the federal claims are dismissed prior to trial, the Court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotation marks omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the interests of judicial economy and avoiding multiplicity of litigation do not outweigh needlessly deciding state law issues. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

### V. CONCLUSION

For the reasons herein, the Court will grant Defendants' motion for summary judgment as to the federal claims. After dismissal of those claims, Plaintiff's remaining claims arise under state

law.  The Court will dismiss the latter claims because the Court declines to exercise supplemental jurisdiction over them.

      The Court will enter an order and judgment consistent with this Opinion.

Dated: July 17, 2024                      /s/ Hala Y. Jarbou
                                                              HALA Y. JARBOU
                                                              CHIEF UNITED STATES DISTRICT JUDGE